UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No. 10-81260-CIV-HURLEY/HOPKINS

SANCTUARY SURGICAL
CENTRE, INC., and GLADIOLUS
SURGICAL CENTER, LLC,

      Plaintiffs,

vs.

BLUE CROSS AND BLUE SHIELD
OF FLORIDA, INC.,

      Defendant.

_____/

**DEFENDANT BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC.'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**
**(And Incorporated Memorandum of Law)**

Defendant Blue Cross and Blue Shield of Florida, Inc. ("BCBSF"), through its attorneys, MCDERMOTT WILL & EMERY LLP, pursuant to Fed. R. Civ. P. 8(a), 9(b), 10(b) and 12(b), respectfully requests the Court to dismiss *with prejudice* Plaintiffs Sanctuary Surgical Centre, Inc. ("Sanctuary") and Gladiolus Surgery Center, LLC's ("Gladiolus") First Amended Complaint [D.E. #27] ("Amended Complaint" or "FAC"), and in support thereof, states:

## I. INTRODUCTION

In their Amended Complaint, Plaintiffs assert three causes of action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"): (1) violation of ERISA section 502(a)(1)(B) for failure to provide health plan benefits; (2) breach of fiduciary duty under ERISA section 502(a)(3); and (3) equitable estoppel under ERISA. All three causes of action lump together more than 1,176 separate manipulations under anesthesia ("MUAs")[1]

---

[1] Exhibits A and B to the Amended Complaint contain 1,176 lines, each of which pertains to a patient who allegedly received one or more MUAs. For ease of reference in this Motion, BCBSF refers to each line as a single MUA.

allegedly provided by Plaintiffs to different patients with different health plans under different circumstances.[2]  *See* FAC, Exhibits A & B.  Plaintiffs, however, fail to allege facts that state a plausible claim with respect to any of the MUAs, much less all of them.

First, Plaintiffs' ERISA claims fail because they provided many of the MUAs identified in Exhibits A and B to patients insured under health plans not subject to ERISA.  Second, BCBSF is not a proper party for many of the MUAs identified in Exhibits A and B because Plaintiffs provided them to patients insured by other Blue Cross or Blue Shield companies.  Third, Plaintiffs lack standing to assert claims for the vast majority of the remaining MUAs identified in Exhibits A and B because they were provided to BCBSF insureds covered under health plans that contained valid anti-assignment provisions.

Even if Plaintiffs provided some MUAs at issue to BCBSF insureds governed by ERISA, and even if Plaintiffs received valid assignments of benefits, the Court still should dismiss the Amended Complaint.  As explained in detail below, Plaintiffs improperly group disparate claims founded on separate transactions or occurrences into single counts, fail to identify plan terms allegedly breached by BCBSF, fail to adequately allege that the MUAs were "medically necessary" for each patient, fail to adequately allege that Plaintiffs relied on BCBSF's representations regarding each patients' benefits, and fail to adequately allege that BCBSF acted beyond its discretion when interpreting plan language.  Indeed, Plaintiffs have not identified a single breached term of a single BCBSF health plan.  For all of these reasons, the Court should dismiss the Amended Complaint *with prejudice*.

---

[2] As discussed in greater detail below, Plaintiffs provided many of the MUAs for which they seek relief in this case to patients insured under individually issued insurance policies, rather than group health plans.  For ease of reference in this Motion, BCBSF refers to individually issued insurance policies and group health plans collectively as "plans."

## II. LEGAL STANDARD

Granting a motion to dismiss is appropriate when a complaint contains simply "a formulaic recitation of the elements of a cause of action." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss, a complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence" in support of the claim and that plausibly suggest relief is appropriate. *See id.* Mere conclusory allegations, however, are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ARGUMENT

Plaintiffs' Amended Complaint asserts two basic theories: (1) BCBSF wrongly denied coverage for each and every MUA at issue; and (2) BCBSF's practice of verifying benefits is wrongful because BCBSF does not cover MUAs. However, for the reasons set forth below, Plaintiffs' Amended Complaint fails to state any claim upon which relief can be granted.

### A. Plaintiffs Fail to State a Claim with Respect to Any Cause of Action.

All of Plaintiffs' causes of action are predicated upon erroneous conclusory allegations that the individual claims identified in Exhibits A and B are (1) for MUAs provided to insureds of health plans governed by ERISA, (2) for MUAs provided to insureds of health plans issued by BCBSF, and (3) covered by valid and enforceable assignments of benefits. Because the plans at issue are identified in Exhibits A and B to Plaintiffs' Amended Complaint and central to Plaintiffs' claims, the Court may look to the plans themselves, including incorporated medical coverage guidelines, without converting this Motion into a motion for summary judgment.[3]

---

[3] "[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Here, Exhibits A and B to the Amended Complaint show that Plaintiffs improperly seek to assert ERISA claims against BCBSF with respect to plans not governed by ERISA, with respect to plans not issued by BCBSF, and without valid, enforceable assignments of benefits.[4]

### 1. Many of the Plans at Issue Are Not Governed by ERISA.

Plaintiffs' Amended Complaint exclusively asserts causes of action arising under ERISA. Plaintiffs therefore can state a claim only if its patients were insured under ERISA plans.  Many of the plans identified in Exhibits A and B show on their face that they are individual policies, governmental plans, or church plans not governed by ERISA.

ERISA applies to group health plans established or maintained by employers or employee organizations; it does not apply to individual health policies.  *See* 29 U.S.C. § 1003(a).  ERISA also does not apply to governmental plans.  *See id.* § 1003(b)(1).  A "governmental plan" is a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  *Id.* § 1002(32); *see also Roy v. Teachers Ins. & Annuity Ass'n*, 878 F.2d 47 (2d Cir. 1989) (affirming dismissal for lack of subject matter jurisdiction because New York State University's Optional Retirement program was a "governmental plan").  Similarly, ERISA does not apply to church plans.  *See* 29 U.S.C. § 1003(b)(2).  A "church plan" is a "plan established and maintained . . . for its employees . . . by a church or by a convention or association of churches which is exempt from tax under section 501 of [the Internal Revenue

---

[4] The Eleventh Circuit has made clear that the "duty to accept the facts in  the complaint as true does not require [courts] to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205-1206 (11th Cir. 2007).

Code]."  29 U.S.C. § 1002(33); *see also Welsh v. Ascension Health*, 2009 U.S. Dist. LEXIS 45947 (N.D. Fla. May 21, 2009) (finding ERISA did not apply to church plan).

At least 249 of the plans identified in Exhibits A and B of the Amended Complaint demonstrate on their face that they are individual policies, governmental plans, or church plans not governed by ERISA.  The policies underlying 109 MUAs on Exhibits A and B are BCBSF policies issued to individuals, rather than plans established or maintained by employers or employee organizations.[5]  (App. Ex. A1.)  The plans underlying 98 MUAs on Exhibits A and B are governmental plans for the Lee County School Board or the Martin County Board of County Commissioners.[6]  (App. Ex. A2.)  The plan underlying 43 MUAs on Exhibits A and B is a governmental plan for Florida state employees.[7]  (App. Ex. A3.)  The plan underlying lines 39 and 366 on Exhibit A is a governmental plan for federal employees.  (App. Ex. A4.)  Finally, the plans underlying lines 15, 161, 185, and 325 on Exhibit A are church plans.  (App. Ex. A5.)

Because these plans demonstrate on their face that they are not subject to ERISA, the Court should reject Plaintiffs' conclusory allegations to the contrary and dismiss all of Plaintiffs' claims that seek relief with respect to MUAs provided to patients insured under non-ERISA plans.

## 2. Many of the Plans at Issue Are Not BCBSF Plans.

Plaintiffs' Amended Complaint is premised upon alleged assignments of plan benefits and pre-service communications concerning those benefits.  Thus, Plaintiffs can state a claim

---

[5] Each "Group ID" commencing with "99999" in Exhibits A and B identifies an individual policy.

[6] Each "Group ID" commencing with "59481" in Exhibit B identifies the Lee County School District's plan; each "Group ID" commencing with "91221" in Exhibit A identifies the Martin County Board of County Commissioners' plan.

[7] Each "Group ID" commencing with "76402" in Exhibits A and B identifies the State of Florida's plan.

against BCBSF only if BCBSF was a party to the ERISA plans from which benefits allegedly were assigned and BCBSF participated in the alleged communications. Many of the plans identified in Exhibits A and B show on their face that they are issued by other Blue Cross or Blue Shield companies, not BCBSF, for which BCBSF could not have engaged in the pre-service communications alleged in the Amended Complaint.

Indeed, the only plan that Plaintiffs cite in their Amended Complaint is from another Blue Cross and Blue Shield company, CareFirst of Maryland, not BCBSF. *See* FAC ¶¶ 26, 37. Plaintiffs' quoted language refers to "CareFirst" rather than BCBSF. *See id.* BCBSF was not a party to CareFirst plans. Rather, BCBSF was the "host" under the BlueCard program, a national program designed in part to enable the insureds of one Blue Cross or Blue Shield company access to health care services in the geographic service area of another Blue Cross or Blue Shield company.[8] (*Cf.* App. Ex. A5(ii) at 3-1.) At least 380 claims identified in Exhibits A and B are for MUAs provided to insureds of other Blue Cross and Blue Shield companies.[9]

As to these plans, BCBSF is not a proper party.[10] The Court should reject Plaintiffs'

---

[8] BCBSF generally does not possess copies of health plans of other Blue Cross or Blue Shield companies.

[9] *See* Appendix Exhibit 6 for a list of BlueCard claim lines in Exhibits A and B to the Amended Complaint.

[10] Although Plaintiffs allege that BCBSF was the "administrator" for all of the MUAs at issue in this case, *see* FAC ¶¶ 14-15, that is a conclusory allegation contradicted by the plans themselves. ERISA defines "administrator" as

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). Here, the Group Plans discussed below state that BCBSF is "not the plan sponsor or plan administrator, as defined by ERISA." *See, e.g.*, App. Ex. 7(i) at 22-3; 20-1; *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (affirming dismissal because the proper defendant is "the party that controls administration of the plan").

conclusory allegations to the contrary and dismiss all of Plaintiffs' claims that seek relief with respect to MUAs provided to patients insured by other Blue Cross and Blue Shield companies.

### 3. Many of the Plans at Issue Prohibit Assignment of Benefits.

Plaintiffs' standing under ERISA is dependent upon receipt of valid assignments of benefits. Plaintiffs can state a claim only if (1) Plaintiffs received assignments of benefits broad enough to encompass the claims and causes of action asserted in the Amended Complaint, and (2) the ERISA plans underlying Plaintiffs' claims authorized assignment of benefits.

First, although Plaintiffs do not attach any of the alleged written assignments of benefits to the Amended Complaint, the "standard" language alleged by Plaintiffs (and re-produced below) is not broad enough to encompass all of the claims and causes of action asserted in this case.

> I understand that I am responsible for all charges. As a courtesy, my insurance will be billed for me. It is my responsibility to pay any deductible, copay or any other balance not paid for by my insurance company. **I authorize insurance benefits to be paid directly to the provider. By signing below, I acknowledge that I authorize payment to [Plaintiff]**…I have been presented with a copy of the Notice of Privacy Policy…I understand the contents of the notice. I request medical insurance benefits either to my self, or to the party who accepts assignment. Regulations pertaining to medical assignment of benefits apply.

*See* FAC ¶¶ 45-51 (emphasis added). This language reveals that, at most, Plaintiffs' patients gave Plaintiffs the right to receive direct payment from their health plans, rather than an assignment of all rights and benefits thereunder.

Second, many of the plans underlying Plaintiffs' claims contained enforceable prohibitions on assignment of benefits. The vast majority of BCBSF plans contained

unambiguous anti-assignment provisions.[11]   (App. Ex. A7.)   For example, BCBSF's Large

Group Plans contain the following anti-assignment provision:

> Except as set forth in the last paragraph of this section, we will not honor any of the following assignments, or attempted assignments, by you to any Provider:
>
> • an assignment of the benefits due to you for Covered Services under this Benefit Booklet;
>
> • an assignment of your right to receive payments for Covered Services under this Benefit Booklet; or
>
> • an assignment of a claim for damage resulting from a breach, or an alleged breach, of the [] Master Policy.
>
> We specifically reserve the right to honor an assignment of benefits or payment by you to a Provider who: 1) is In-Network under your plan of coverage; 2) is a NetworkBlue Provider even if that Provider is not in the panel for your plan of coverage; 3) is a Traditional Program Provider; 4) is a BlueCard® (Out-of-State) PPO Program Provider; 5) is a BlueCard® (Out-of-State) Traditional Program Provider; or 6) is a licensed Hospital, Physician, or dentist and the benefits which have been assigned are for care provided pursuant to section 395.1041, *Florida Statutes*. A written attestation of the assignment of benefits may be required.

(*See, e.g.*, App. Ex. A7(ii) at 6-5.)

Prior to July 1, 2009, an unambiguous anti-assignment provision rendered an assignment

ineffective.  *See* Fla. Stat. § 627.638(2) (2005, 2008 and 2009); *Physicians Multispecialty Group*

*v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004); *Kohl v. Blue*

*Cross & Blue Shield of Fla., Inc.*, 955 So. 2d 1140 (Fla. 4th DCA 2007).  Accordingly, Plaintiffs

---

[11] Appendix Exhibit 7 includes two template BlueOptions Large Group Plans and a template BlueOptions Small Group Plan (collectively "Group Plans"), with all endorsements applicable to claim lines 197, 293 and 400 in Exhibit A to the Amended Complaint.  Because the standard terms of the Group Plans, which are representative of the standard terms of the vast majority of BCBSF group plans, debunk necessary conclusory allegations in the Amended Complaint, BCBSF has shown that Plaintiffs fail to state a claim that rises above the speculative level.  In the interest of party and judicial economy, BCBSF has not gathered and submitted each of the plans in its possession underlying the 1,176 MUAs at issue in this case.  However, if the Court requires BCBSF to file each plan in its possession to fully prevail on this Motion, BCBSF requests that it be given the opportunity to do so in a supplemental filing.

cannot state a claim for MUAs provided to BCBSF insureds prior to July 1, 2009.  Only thirteen

of the 1,176 MUAs for which Plaintiffs seek damages were provided on or after July 1, 2009.[12]

Plaintiffs' standard assignment language is insufficiently broad to encompass all of the

claims and causes of action alleged in the Amended Complaint, and plans that are central to the

Amended Complaint unambiguously prohibit assignment of benefits.  Accordingly, the Court

should reject Plaintiffs' conclusory allegations and dismiss all of Plaintiffs' claims subject to

ineffective assignments of benefits.[13]

**B. Plaintiffs Fail to State a Claim for
Violation of Section 502(a)(1)(B) of ERISA.**

The Court should dismiss Count I because Plaintiffs, in violation of Fed. R. Civ. P. 8 and

10, improperly group disparate claims founded on separate transactions or occurrences together

and fail to identify a single plan term breached by BCBSF.

Fed. R. Civ. P. 8(a)(2) requires a complaint to contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  The purpose of this requirement "is to give

the defendant fair notice of what the claim is and the grounds upon which it rests."  *Davis v.*

---

[12] Of the 1,176 MUAs, only thirteen of them (lines 96, 105, 165, 202, 214, 246, 400, 439, 450, 552, 614, 616 on Exhibit A, and line 310 on Exhibit B) reflect dates of service on or after July 1, 2009.  Of those thirteen MUAs, only eight of them (lines 96, 105, 165, 214, 246, 400, 552, and 614 on Exhibit A) are for patients insured by BCBSF.  Of those eight MUAs, only five (lines 105, 165, 214, 400, and 552 on Exhibit A) were provided to patients insured by ERISA plans.  Even with respect to those five, however, for the reasons set forth below, Plaintiffs have failed to state a claim upon which relief can be granted.

[13] To the extent Plaintiffs argue that BCBSF has waived or is estopped from enforcing anti-assignment provisions because BCBSF paid Plaintiffs for some MUAs several years ago or participated in pre-service communications with Plaintiffs, the plans themselves foreclose that argument.  For example, the anti-assignment provision at section 6-5 of the Group Plans allows BCBSF to pay providers in certain situations.  The Group Plans at section 22-3 also provide that "[n]o oral statements, representations, or understanding by any person can change, alter, delete, add, or otherwise modify the express written terms of this Booklet."  Regardless, the First Amended Complaint contains no allegations regarding waiver.

*Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quotation omitted).  Fed. R. Civ. P. 10(b) further provides that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  The Eleventh Circuit has explained that Rules 8 and 10:

> work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.

*Davis*, 516 F.3d at 980 n. 57.

In the Amended Complaint, Plaintiffs group together more than 1,000 different patients with different conditions on whom Plaintiffs performed MUAs as part of distinct transactions. To prove their entitlement to benefits, Plaintiffs would have to establish the medical necessity of each MUA with respect to each patient, according to the terms of the individual patient's health plan, which would require analysis of a vast array of distinct issues.  As a practical matter, it is impossible to evaluate the medical necessity of over 1,000 cases when grouped together in a single count, much less to grant relief on a single count encompassing thousands of independent mixed questions of fact and law.[14]

Moreover, Plaintiffs fail to identify *any* term of any BCBSF-issued health plan that BCBSF has allegedly breached.  As noted above, the only plan terms referenced in the Amended

---

[14] Plaintiffs' allegation that BCBSF did not review each MUA individually but simply denied coverage for every MUA across the board does not eliminate this concern.  First, across-the-board denials are not inconsistent with the notion that an MUA is actually a medically unnecessary procedure as provided by Plaintiffs.  *See Advanced Rehab. LLC v. Unitedhealthgroup, Inc.*, 2012 U.S. App. LEXIS 20050, at *11-12 (3d Cir. Sept. 20, 2012). Second, across-the-board denials would not entitle Plaintiffs to recovery without a further showing that the denials were wrongful, *i.e.* Plaintiffs would have to show that the MUAs were, in fact, medically necessary with respect to every patient on which they were performed.  *See id.*

Complaint are from a health plan issued by CareFirst of Maryland, and Plaintiffs do not allege—nor could they in good faith—that BCBSF has any ownership or control over CareFirst of Maryland.  Regardless, Plaintiffs cite only sparse terms from the CareFirst plan in the Amended Complaint, and those terms have nothing to do with medical necessity, experimental procedures, or even what services are covered under the plan.[15]  Thus, even if the allegations in the Amended Complaint could somehow be read to hold BCBSF responsible for the terms of a CareFirst health plan, Plaintiffs allege no facts that show BCBSF failed to pay for covered services.  Plaintiffs, therefore, fail to state a claim for benefits, and the Court should dismiss Count I *with prejudice*.

### C. Plaintiffs Fail to State a Claim for Equitable Estoppel under the Common Law of ERISA.

The Court should dismiss Count III because Plaintiffs fail to allege that any pertinent plan terms are ambiguous and that BCBSF made misrepresentations concerning those plan terms upon which Plaintiffs could have relied.

To state a claim for equitable estoppel under the federal common law of ERISA, Plaintiffs must show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to the plaintiff that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d

---

[15] Similarly, Plaintiffs provide no facts to support their allegations that the MUAs at issue were "medically necessary," as that term is defined in the various plans. *See Generations Physical Med., LLC v. United Healthcare Servs.*, 2012 U.S. Dist. LEXIS 5675, at *8 (D.N.J. Jan. 18, 2012) (granting motion to dismiss because "Plaintiff simply asserts, without accompanying factual support, that the MUA services at issue were 'medically necessary'"). To the extent that Plaintiffs attempt to allege medical necessity by their allegation that BCBSF representatives sometimes provided "pre-authorizations or pre-certifications" for the MUAs at issue, Plaintiffs do not allege that the pre-authorization procedures were required in every case. *See* FAC ¶¶ 23, 77. Indeed, Plaintiffs cite no BCBSF plan terms that even contemplate a pre-authorization or pre-certification procedure. *See generally id.; cf. Sanctuary Surgical Ctr., Inc. v. Conn. Gen. Life Ins. Co.*, 2012 U.S. Dist. LEXIS 156772, at *9-10 (S.D. Fla. Nov. 1, 2012).

1065, 1069 (11th Cir. 2004).

In the Amended Complaint, Plaintiffs fail to identify *any* provisions of any BCBSF plan.[16]  *See generally* FAC.   As explained above, the only terms quoted in the Amended Complaint are terms from a CareFirst plan.  *See* Section III(A)(2), *supra*.  Because Plaintiffs fail to identify any ambiguous language from a BCBSF health plan, Plaintiffs fail to state a claim for equitable estoppel under ERISA.   To the extent that Plaintiffs suggest without support or elaboration that the definition of "medical necessity" is ambiguous, the Group Plans, and their incorporated medical coverage guidelines refute that suggestion.  The Group Plans, in section 2-1 entitled "What Is Covered?," state that "[a]ll benefits for Covered Services are subject to . . . our Medical Necessity coverage criteria and benefit guidelines then in effect."  The Group Plans define "medical necessity" as follows:

> Medically Necessary or Medical Necessity means, **in accordance with our guidelines and criteria then in effect**, for coverage and payment purposes only, that a Health Care Service is required for the identification, treatment, or management of a Condition, and is, **in the opinion of BCBSF**:
>
> 1. consistent with the symptom, diagnosis, and treatment of the Condition being treated;
>
> 2. widely accepted by the practitioners' peer group as efficacious and reasonably safe based upon scientific evidence;
>
> 3. **universally accepted in clinical use** such that omission of the service in these circumstances raises questions regarding the accuracy of diagnosis or the appropriateness of the treatment;

---

[16] Plaintiffs have brought similar cases against other insurers in this Court.  In those cases, this Court has found that Plaintiffs stated claims for equitable estoppel, in part because they quoted language from insurance plans that suggest the insurer "would not have issued pre-approvals if it did not find the MUAs medically necessary."  *Sanctuary Surgical Centre, Inc., et al. v. Unitedhealthcare Inc., et al.*, 2012 U.S. Dist. LEXIS 151404, at *15 (S.D. Fla. Oct. 22, 2012). This Court, therefore, found that allegation "provides sufficient factual support for the conclusion that the MUAs were, in fact, medically necessary so as to defeat a motion to dismiss." *Id.* at *15-16.  Plaintiffs point to no such provisions in this case.

4. **not Experimental or Investigational**;[17]

5. not for cosmetic purposes;

6. not primarily for the convenience of, the Covered Person's family, the Physician or other provider;

7. **the most appropriate level of service or care** which can safely be provided to the Covered Person; and

8. in the case of inpatient care, the Health Care Service(s) cannot be provided safely in an alternative setting.

Note: It is important to remember that any review of Medical Necessity by us is solely for the purposes of determining coverage or benefits under this Booklet and not for the purpose of recommending or providing medical care.  In this respect, we may review specific medical facts or information pertaining to you.  Any such review, however, is strictly for the purpose of determining, among other things, whether a Service provided or proposed meets the definition of Medical Necessity in this Booklet as determined by us.   In applying the definition of Medical Necessity in this Booklet, we may apply our coverage and payment guidelines then in effect. You are free to obtain a Service even if we deny coverage because the Service is not Medically Necessary; however, you will be solely responsible for paying for the Service.

Group Plans at 4-1 and 23-9 (emphasis added).  Because Plaintiffs fail to identify any ambiguous plan terms, and the foregoing representative example of BCBSF's "medical necessity" definition is unambiguous, Plaintiffs fail to state a claim for equitable estoppel under ERISA.[18]

Furthermore, even if Plaintiffs had identified an ambiguous plan term, Plaintiffs have failed to state a claim for equitable estoppel because the Amended Complaint contains no allegations that BCBSF made representations to Plaintiffs that constitute an informal

---

[17] The Group Plans contain an extensive definition for "Experimental or Investigational."  *See* Group Plans at 23-5 to 23-6.

[18]  The fact that BCBSF health plans afford BCBSF discretion does not make their terms ambiguous. *Cf. Weiss v. CIGNA Healthcare, Inc.*, 972 F. Supp. 748, 755 (S.D.N.Y. 1997) ("The Plan clearly provides that it is CIGNA's responsibility to determine what treatment options are 'Medically Necessary,' . . . and there is no express statement in the Plan of the materials which CIGNA must use to make such determinations."); *see also Jett v. Blue Cross*, 890 F.2d 1137, 1140 (11th Cir. 1989) (finding that in determining medical necessity, the claims administrator of an ERISA-covered plan is not obliged to contact the treating physician, and the district court is not required to give greater weight to the opinion of a treating physician who has an economic interest in the approval of the claim").

interpretation of the ambiguity.  Specifically, Plaintiffs failed to allege that BCBSF made any representation to Plaintiffs that the MUAs they provided were "medically necessary" as that term is defined in BCBSF's plans.  *See generally* FAC.  Plaintiffs, therefore, fail to allege facts that plausibly support either of the necessary elements for their equitable estoppel claim, and the Court should dismiss Count III *with prejudice*.

### D. Plaintiffs Fail to State a Claim for Violation of Fiduciary Duty under Section 502(a)(3) of ERISA.

The Court should dismiss Count II because (1) Plaintiffs lack standing to sue for breach of fiduciary duty under ERISA; (2) Plaintiffs fail to state a claim for breach of fiduciary duty that is not duplicative of Count I for benefits and Count III for equitable estoppel; and (3) Plaintiffs fail to allege facts that plausibly support the necessary elements for breach of fiduciary duty under ERISA.

### 1. Plaintiffs Lack Standing to Sue for Breach of Fiduciary Duty under ERISA.

Plaintiffs lack standing to assert a claim for breach of fiduciary duty under ERISA because Plaintiffs' alleged assignments of benefits are not broad enough to encompass claims for breach of fiduciary duty.  Plaintiffs' alleged "standard" assignment language (FAC ¶ 47) reveals that, at most, Plaintiffs obtained only the right to receive payment of benefits from BCBSF, which does not give Plaintiffs the right to sue as assignees for a breach of fiduciary duty.  *See Tex. Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 219 (5th Cir. 1997) (holding that breach of fiduciary duty claims are not assigned by implication or by operation of law but only by "an express and knowing assignment"); *Am. Surgical Assistants, Inc. v. Great W. Healthcare of Tex., Inc.*, 2010 U.S. Dist. LEXIS 13573, 2010 WL 565283, at *4 (S.D. Tex. Feb. 17, 2010) (holding that plaintiff must plead that its "patients

expressly and knowingly assigned their rights to sue for breach of fiduciary duty"); *Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., Inc.*, 2006 U.S. Dist. LEXIS 87194, 23 (D. Kan. Nov. 29, 2006) (holding that provider had no standing to assert breach of fiduciary duty claim because the assignment did not contemplate breach of fiduciary duty claims).[19]

**2. Plaintiffs' Claim for Breach of Fiduciary Duty
Is Duplicative of Plaintiffs' Claim for Benefits under Count I
and Plaintiffs' Claim for Equitable Estoppel under Count III.**

Plaintiffs also fail to state a claim for breach of fiduciary duty that is not duplicative of Counts I and III. Claims for breach of fiduciary duty under ERISA are limited to extraordinary circumstances for which there is not another adequate remedy at law. *See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) ("[W]here Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"). Accordingly, to the extent that Plaintiffs' claim for breach of fiduciary duty overlaps with Count I for unpaid benefits or Count III for equitable estoppel, the Court should dismiss Count II for failure to state a claim.

**3. Plaintiffs Fail to Allege Facts that Plausibly Support
the Necessary Elements for Breach of Fiduciary Duty.**

Plaintiffs fail to allege facts that plausibly support the necessary elements of a claim for

---

[19] Plaintiffs cite *Connecticut State Dental v. Anthem Health Plans*, 591 F.3d 1337 (11th Cir. 2009), for the proposition that "[t]he assignments of benefits forms in this case contain language assigning among other things, the right to payment under an ERISA plan to Plaintiffs which creates derivative standing for all actions under ERISA." FAC ¶ 50. In *Connecticut State Dental*, however, the Eleventh Circuit did not hold that the assignment of the right to direct payment creates derivative standing for *all* actions under ERISA. Rather, the Eleventh Circuit found only that the assignment of the right to direct payment also assigns the ability to enforce that right. *Conn. State Dental*, 591 F.3d at 1352-53. The court was not faced with actions for breach of fiduciary duty or equitable estoppel under ERISA, and it made no finding that an assignment of the right to payment creates derivative standing for "all actions under ERISA." *See generally id.*

breach of fiduciary duty under ERISA.  "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010).   In the Amended Complaint, Plaintiffs allege that BCBSF breached its fiduciary duty to BCBSF insureds by verifying coverage for MUAs or pre-authorizing or pre-approving MUAs that BCBSF ultimately determined were not medically necessary.[20]  *See generally* FAC.  Specifically, Plaintiffs allege that "[d]uring each verification of benefits/pre-authorization call [ ], BCBS, through its agents or employees represented and verified to Plaintiffs, that each patient was covered by the applicable BCBS policy for the MUA to be rendered by the Plaintiffs, without disclosing any limitation on coverage." FAC ¶ 22.

### a. Plaintiffs Fail to Allege that BCBSF Made Any Misrepresentations.

Plaintiffs fail to plausibly allege that BCBSF made any misrepresentations during pre-service communications.  Although Plaintiffs conclusorily allege that BCBSF misrepresented coverage for MUAs, Plaintiffs fail to cite to any BCBSF plans (or even acknowledge any BCBSF plans), each of which includes detailed provisions concerning covered services, medical necessity, experimental services, and pre-service communications.  For example, the Group Plans make clear that (i) MUAs are covered in certain circumstances but not covered in other

---

[20] It is well established that a breach of fiduciary duty claim under ERISA is "primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 458 F.3d 359, 362 (4th Cir. 2006) ("ERISA's fiduciary duty provisions are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries, rather than remedying individual wrongs.") (citations omitted).  Here, Plaintiffs' breach of fiduciary duty claim revolves around Plaintiffs' individual experiences with BCBSF rather than any issue with the integrity of the plan that protects all beneficiaries.

circumstances, (ii) BCBSF has the discretion to determine medical necessity for purposes of coverage, (iii) coverage determinations for MUAs are made after the provisions of services and receipt of a claim, and (iv) any pre-service communications do not affect coverage.

First, BCBSF's incorporated medical coverage guidelines for MUAs state that a MUA may be a covered service depending on the reason the MUA is performed (i.e., the patient's specific medical condition). (App. Ex. A8.) Thus, even accepting as true Plaintiffs' allegation that BCBSF told Plaintiffs that MUAs could be covered services, that allegation, without more, does not state a claim for breach of fiduciary duty because the plans themselves make clear that MUAs are covered in some circumstances but not covered in other circumstances.

Second, the definition of "medical necessity" in BCBSF's Group Plans also makes clear that it is a determination subject to BCBSF's opinion. Group Plans at 23-9. Plaintiffs' allegation that the MUAs at issue in this case were "medically necessary" from a patient-care standpoint has no bearing on whether the MUAs were "medically necessary" for purposes of determining coverage. Because BCBSF retained discretion to determine whether the MUAs at issue were "medically necessary," Plaintiffs can state a claim for breach of fiduciary duty only if BCBSF abused its discretion. *Cf. Advanced Rehab. LLC v. Unitedhealthgroup, Inc.*, 2012 U.S. App. LEXIS 20050 (3d Cir. Sept. 20, 2012) (affirming dismissal of complaint with prejudice where insurer denied MUAs as not medically necessary despite allegation that the AMA lists MUA procedures under a Category 1 CPT code, because plans gave insurer discretion to determine whether procedures were medically necessary). Plaintiffs, however, have failed to adequately allege that BCBSF abused its discretion.

Third, under the Group Plans, absent exceptions not applicable here, BCBSF makes clear that it "will determine whether Services are Covered Services under this Booklet *after* you have

obtained the Services and we have received a claim for the Services."  Group Plans at 2-1 (emphasis added).  The Group Plans further provide that BCBSF is "not required to render an opinion or make a coverage or benefit determination with respect to a Service that has not actually been provided to you unless the terms of this Benefit Booklet require (or condition payment upon) approval by us for the Service before it is received."  Group Plans at 20-3.  The Amended Complaint contains no allegations that BCBSF's members were required to obtain prior approval before receiving MUAs.

Finally, the Group Plans also prescribe that pre-service communications cannot affect coverage decisions.

> In determining whether Health Care Services are Covered Services under this Booklet, no written or verbal representation by any employee or agent of BCBSF, or by any other person shall waive or otherwise modify the terms of this Booklet and, therefore, neither you, nor the Group, nor any health care Provider or other person should rely on any such written or verbal representation.

*Id.* at 2-1; *see also id* at 22-3 ("No oral statements, representations, or understanding by any person can change, alter, delete, add, or otherwise modify the express written terms of this Booklet.").

### b. Plaintiffs Fail to Allege That They Reasonably Relied Upon Any Pre-Service Communications with BCBSF.

Plaintiffs fail to allege that they reasonably relied upon any alleged misrepresentations made by BCBSF during pre-service communications.  In the Amended Complaint, Plaintiffs allege that "[t]he payments [from BCBSF] gradually decreased in amounts, until they finally ceased some years later after Mark Fritz, Plaintiffs' Operations Manager, received a telephone call from Gary McDonald, a representative of BCBS.  Mr. McDonald called to inform Mr. Fritz that the Plaintiffs would no longer be reimbursed for MUAs by [BCBSF]."  FAC ¶ 31.  Plaintiffs further allege that "[f]ollowing the telephone call from Mr. McDonald, BCBS began the process

of issuing systematic denials on every claim for MUAs it received from Plaintiffs." *Id.* ¶ 34.  As a result, Plaintiffs allege, "[i]t became clear to Plaintiffs that [BCBSF] would in no event make payment to Plaintiffs for MUA procedures for any medical condition." *Id.*

These specific factual allegations contradict Plaintiffs' conclusory allegation that "[n]either before nor after Defendant ceased making payments to Plaintiffs, did Defendant formally indicate to Plaintiffs that Defendant would not be making full and adequate payment on Plaintiffs' claims." *Id.* ¶ 76; *cf. QSGI, Inc. v. IBM Global Fin.*, 2012 U.S. Dist. LEXIS 49601, 10 (S.D. Fla. Mar. 13, 2012) (disregarding conclusory allegations that are contradicted by other specific factual allegations in the complaint).  Indeed, Plaintiffs' conclusory allegation that they "relied" on pre-authorizations and that it was "reasonable for [them] to do so" is undermined by their factual allegation that "[i]t became *clear* [to them that BCBSF] would in *no* event" make payment for MUA procedures."  *Compare* FAC ¶ 81, *with* FAC ¶ 34 (emphasis added).

Based upon the totality of the allegations in the Amended Complaint, Plaintiffs could not have reasonably relied upon any pre-service representations of coverage or pre-authorization or approval following the telephone call from Mr. McDonald.  Plaintiffs certainly could not have reasonably relied upon any such representations for the few MUAs that were provided after July 1, 2009.  According to the Amended Complaint, Plaintiffs knew that BCBSF would deny their MUA claims, but Plaintiffs kept providing the MUAs to BCBSF insureds anyway.

### c. Plaintiffs Fail to Plead with Particularity.

Plaintiffs, in their breach of fiduciary duty claim, have failed to allege what specific representations BCBSF made to Plaintiffs, much less who made them and when.  However, "Plaintiffs cannot rely on the pre-approvals Defendant granted without describing their substance and significance.  Merely alleging pre-approvals and nothing more falls well short of the

particularity required by Rule 9(b)." *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 2012 U.S. Dist. LEXIS 38819, at *11 (S.D. Fla. Mar. 22, 2012).

For all of these reasons, the Court should dismiss Count II *with prejudice*.

## IV. CONCLUSION

**WHEREFORE**, Defendant Blue Cross and Blue Shield of Florida, Inc. respectfully requests that the Court dismiss Plaintiffs Sanctuary Surgical Centre, Inc. and Gladiolus Surgery Center, LLC's First Amended Complaint *with prejudice*, together with such other and further relief as the Court deems just and proper.

**McDERMOTT WILL & EMERY LLP**

By:           */s/ Robert M. Kline*
Marcos Daniel Jiménez (FBN 441503)
*mjimenez@mwe.com*
Justin B. Uhlemann (FBN 568872)
*juhlemann@mwe.com*
Robert M. Kline (FBN 46363)
*rkline@mwe.com*
333 Avenue of the Americas, Suite 4500
Miami, Florida 33131
Tel. 305.358.3500
Fax. 305.347.6500

*Counsel for Defendant*
*Blue Cross and Blue Shield of Florida, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on <u>**January 7, 2013**</u>, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

_/s/ Robert M. Kline_

Robert M. Kline

## SERVICE LIST

*Sanctuary Surgical Centre, Inc. et al. v. Blue Cross and Blue Shield of Florida, Inc.*
Case No. 10-81260-CIV-HURLEY/HOPKINS
United States District Court, Southern District of Florida

| | |
|---|---|
| Marcos Daniel Jiménez<br>*mjimenez@mwe.com*<br>Justin B. Uhlemann<br>*juhlemann@mwe.com*<br>Robert M. Kline<br>*rkline@mwe.com*<br>333 Avenue of the Americas, Suite 4500<br>Miami, Florida 33131<br>Tel. 305.358.3500<br>Fax. 305.347.6500<br><br>*Counsel for Defendant Blue Cross and Blue Shield of Florida, Inc.* | Martin R. Raskin<br>*mraskin@raskinlaw.com*<br>RASKIN & RASKIN, P.A.<br>866 South Dixie Highway<br>Coral Gables, Florida 33146<br>Tel. 305.444.3400<br>Fax. 305.445.0266<br><br>*Counsel for Plaintiffs Sanctuary Surgical Centre, Inc., and Gladiolus Surgery Center, LLC* |
| Jane Serene Raskin<br>*jraskin@raskinlaw.com*<br>RASKIN & RASKIN, P.A.<br>2601 South Bayshore Drive, Suite 725<br>Miami, Florida 33133<br>Tel. 305.444.3400<br>Fax. 305.445.0266<br><br>*Counsel for Plaintiffs Sanctuary Surgical Centre, Inc., and Gladiolus Surgery Center, LLC* | Stephen E. Lampf (admitted *pro hac vice*)<br>*lampf@llpplaw.com*<br>Traci A. Zalinski (admitted *pro hac vice*)<br>*zalinski@llpplaw.com*<br>LAMPF, LIPKIND, PRUPIS & PETIGROW, P.A.<br>80 Main Street, Suite 350<br>West Orange, New Jersey 07052<br>Tel. 973.325.2100<br>Fax. 973.325.2839<br><br>*Counsel for Plaintiffs Sanctuary Surgical Centre, Inc., and Gladiolus Surgery Center, LLC* |

DM_US 40528841-1.022370.0067